IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LOIS M. FISHER, | : | CIVIL ACTION NO. **3:CV-04-0914** |
| | : | |
| Plaintiff | : | (Judge Caputo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| JOANNE B. BARNHART, | : | |
| Commissioner of | : | |
| Social Security, | : | |
| | : | |
| Defendant | : | |

**REPORT AND RECOMMENDATION**

This is a Social Security disability case pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

The Plaintiff, Lois M. Fisher, is seeking review of the decision of the Commissioner of Social Security

("Commissioner") which denied her claims for Disability Insurance Benefits ("DIB") and

Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security

Act (Act), 42 U.S.C. §§ 1381-1383(f).

**I. PROCEDURAL HISTORY.**

The Plaintiff filed applications for DIB and SSI benefits on January 30, 2003, alleging an

inability to work since September 30, 2002, due to "bad discs back-legs-pain-arthritis in back &

legs." "Unable to sit or stand for prolonged time causes pain-medications make me tired."  (R. 14,

46, 60).[1]  Her claims were denied (R. 13), and a timely request for a hearing was filed.  A hearing

---

[1]There is no dispute that the Plaintiff meets the nondisability requirements for DIB benefits and is insured for benefits through the date of the ALJ's decision, October 15, 2003. (R. 18).  The record reveals that Plaintiff had past work experience to provide insured status.  (R. 49-56).  We also note that the Plaintiff's date of last insured is September 30, 2005. (R. 56).

was conducted before an Administrative Law Judge ("ALJ") on September 30, 2003.  Plaintiff was denied benefits pursuant to the ALJ's decision of October 15, 2003. (R. 13-19).

The Plaintiff requested review of the ALJ's decision by the Appeals Council.  Said request for review was denied on February 28, 2004 (R. 4-7), thereby making the ALJ's decision the "final decision" of the Commissioner.  42 U.S.C. § 405(g). That decision is the subject of this appeal.

In compliance with the Procedural Order issued in this matter, the parties have filed briefs in support of their respective positions.  (Docs. 5 & 6).

## II. STANDARD OF REVIEW.

When reviewing the denial of DIB and SSI benefits, we must determine whether the denial is supported by substantial evidence.  *Brown v. Bowen*, 845 F.2d 1211, 1213 (3rd Cir. 1988); *Mason v. Shalala*, 994 F.2d 1058 (3rd Cir. 1993).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360. (3d Cir. 1999).  It is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The parties agree on the stated standard of review.  (Doc. 5, p. 4 & Doc. 6, pp. 1-2).

To receive disability benefits, the Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his
> physical or mental impairment or impairments are of such severity that he

2

is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

## III.  ELIGIBILITY EVALUATION PROCESS.

A five-step evaluation process is used to determine if a person is eligible for disability benefits.  *See* 20 C.F.R. § 404.1520 (1990).  *See also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).  If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further.  20 C.F.R. §§ 404.1520, 416.920 (1995).[2]

The first step of the process requires the Plaintiff to establish that she has not engaged in "substantial gainful activity."  *See* C.F.R. §§ 404.1520(b), 416.920(b). The second step involves an evaluation of whether the Plaintiff has a severe impairment. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). The Commissioner must then determine whether the Plaintiff's impairment or combination of impairments meets or equals those listed in Appendix 1, Subpart P, Regulation No. 4.

If it is determined that the Plaintiff's impairment does not meet or equal a listed impairment, the Commissioner must continue with the sequential evaluation process and consider

---

[2]The Plaintiff also states the evaluation process in her Brief.  Doc. 5, p. 9.

whether the Plaintiff establishes that she is unable to perform her past relevant work. *See* 20 C.F.R. § 404.1520(e), 416.920(e). The Plaintiff bears the burden of demonstrating an inability to return to her past relevant work. *Plummer*, 186 F.3d at 428. Then the burden of proceeding shifts to the Commissioner to demonstrate that other jobs exist in significant numbers in the national economy that the Plaintiff is able to perform, consistent with her medically determinable impairments, functional limitations, age, education and past work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f). This is step five, and at this step, the Commissioner is to consider the Plaintiff's stated vocational factors. *Id.*

The ALJ proceeded through each step of the sequential evaluation process and concluded that the Plaintiff was not disabled within the meaning of the Social Security Act. (R. 13-14). In reaching this determination, the ALJ first found that Plaintiff had not engaged in substantial gainful work activity since her alleged onset date. (R. 18). Further, the ALJ determined that the medical evidence establishes that Plaintiff has a back and a knee disorder, namely multi-level degenerative osteoarthritis of her lumbar spine and left knee, impairments which are severe within the meaning of the Regulations, but not severe enough to meet or equal the criteria for establishing disability under the listed impairments as set forth in Appendix 1, Subpart P, Regulations No. 4. (R. 15, 18).

The ALJ noted that Plaintiff's testimony is not completely credible or consistent with the objective medical record, to the extent that she claims limitations imposed by her impairment. (R. 17, 18). When assessing her residual functional capacity ("RFC"), the ALJ found that Plaintiff retains the following residual functional capacity to perform sedentary work. (R. 17, 18). The ALJ also found that the Plaintiff's severe impairments do not prevent her from performing her past relevant work

as a telemarketer and lamp shade wrapper. (R. 19). Thus, the ALJ found that the Plaintiff did not meet her burden in Step Four, and concluded that she was not disabled.

The Social Security Administration Regulations only authorize payment of SSI disability benefits from the date an application is filed.  *See* 20 C.F.R. § 416.202 and § 416.501.  In this case, as stated, Plaintiff's SSI application was filed January 30, 2003.  (R. 46).

The relevant time period for this case with respect to Plaintiff's DIB application is September 30, 2002 (alleged onset date),  through October 15, 2003 (date of ALJ's decision).

## IV.  DISCUSSION.

This appeal involves the denial of Plaintiff's applications for DIB and SSI applications. Plaintiff filed her applications in January, 2003, which were denied in October, 2003, by the decision of an ALJ. The issue in this case is whether substantial evidence supports the Commissioner's decision that the Plaintiff was not disabled.  (R. 19).

While the ALJ found that the Plaintiff had severe impairments, namely, multi-level degenerative osteoarthritis of her lumbar spine and left knee  (R. 19, ¶ 9.), he determined that her impairments did not meet or medically equal a listed impairment.   Essentially, the Plaintiff disputes the ALJ's finding that she does not have an impairment that meets or medically equals a listed impairment, *i.e.,* 1.02 & 1.04.  Specifically, the Plaintiff contends that the ALJ erred in finding that her testimony regarding the severity of her impairments and restrictions was not completely credible or consistent with the record.  (Doc. 5, p. 7).  The Plaintiff further contends that the ALJ failed to give proper weight to the opinions of her treating physicians and to the objective medical evidence. (*Id*.).

The Plaintiff finally argues that the ALJ's decision that she can perform sedentary work and her past relevant work, *i.e.* the ALJ's RFC finding, is not supported by substantial evidence.

### A. Background

The Plaintiff was born on July 1, 1940. (R. 46). She was 63 years old at the time of the hearing before the ALJ on September 30, 2003, and is currently age 64. (Doc. 5, p. 3). Thus, Plaintiff is a person of advanced age under the Regulations. *See* 20 C.F.R. § 404.1563(e). (R. 18, ¶ 8.). She has a high school education (R. 13), and her past relevant work included laundry aide, stock person, telemarketer and lamp shade wrapper. (R. 13-14). The Plaintiff alleges that she became disabled on September 30, 2002, because of bad discs in her back and arthritis in her back and legs. (R. 14, 60). The ALJ found that the Plaintiff's impairments, multi-level degenerative osteoarthritis of her lumbar spine and left knee, were severe. (R. 18, ¶ 3.). However, the ALJ also found that the Plaintiff retained the residual functional capacity to engage in sedentary work activity. (R. 17).[3] Finding that the Plaintiff's RFC did not preclude her from performing her past relevant work, the ALJ held that the Plaintiff was not disabled within the meaning of the Social Security Act. (R. 19).

---

[3]Sedentary work is defined as follows: (a) *Sedentary work.* Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §404.1567 (a).

### B. Medical Evidence

On appeal, Plaintiff makes the assertion that the ALJ erred in finding that she had the RFC to perform her past relevant work.  Additionally, the Plaintiff contends that the ALJ did not give proper weight to the opinions of her treating physicians (Dr. Prebola and Dr. Durkin (R. 244)), and her testimony regarding her limitations and her inability to perform substantial gainful activity.

The medical evidence reveals that Plaintiff had an MRI of her lumbar spine in August, 2002 which revealed:

> Multiple disc bulges as above with neural foraminal narrowing as above.  A levoscoliosis is noted of the lumbar spine.

(R. 163).  Degenerative changes in Plaintiff's lumbar spine were also found.  Further, the Plaintiff's bone scan and x-rays were positive for degenerative arthritis.  (*Id*.).  The August, 2002, MRI also revealed the following:

> There is degenerative change noted with disc dessication of the lumbar discs with severe disc space narrowing of L3-4 and L5-S1 with mild disc space narrowing of L2-3.
>
> At L5-SA, there is a small posterior osteophyte noted with a small disc bulge as well.  Facet hypertrophy is noted at this level.  There is mild to moderate bilateral neural foraminal narrowing.
>
> At L4-5, facet hypertrophy is noted.  There is a small disc bulge, slightly greater on the left.  There is mild left neural foraminal narrowing at this level.
>
> At L3-4, a minimal disc bulge is noted greater on the right.  There is mild facet hypertrophy.
>
> At L2-3, a minimal disc bulge is noted and there is facet hypertrophy.  There is mild bilateral inferior neural foraminal narrowing.  There may be a tear in the annulus at L2-3.

>   Multiple small Schmorl's nodes are noted.  Reactive bone
>   marrow change is noted most prominently about the L3-4 disc space.

(R. 162).

The Plaintiff has lumbar discogenic disease and low back pain.  (R. 144).  She has a past medical history of degenerative osteoarthritis and osteoporosis.  (*Id*.).  The Plaintiff had no numbness or weakness in October, 2002.  Neurologically, her muscle grades were 5/5.  (*Id*.).  An April, 2003 EMG study was normal.  (R. 141).  There was no evidence of radiculopathy or diffuse lower extremity peripheral polyneuropathy.  (*Id*.).

In September, 2003, Plaintiff's treating doctor, Dr. Durkin, found that she had osteoarthritis, as well as a deceased range of motion in her lumbar spine, weakness in her left quadriceps and tenderness on the right side of her lumbar spine.  (R. 214).  Thus, Plaintiff had degenerative joint disease of the lumbar spine.  Physical therapy did not improve her symptoms, and she continued to suffer from low back pain.  Plaintiff's pain was found to radiate into her right leg.  Dr. Durkin stated that Plaintiff had multi-level disc space narrowing in the lumbar spine with a leftward scoliosis.  (R. 214).  Dr. Durkin concluded that the Plaintiff "is unable to hold down any job whatsoever.  Back pain is exacerbated by prolonged sitting.  Prolonged standing exacerbates her symptoms as well."  (R. 214).

In June, 2003, Dr. Prebola stated that Plaintiff had lumbar facet degenerative arthritis, degenerative disc disease and mild obesity.  (R. 216).  Plaintiff's bone scan confirmed the lumbar degenerative disc disease, but her EMG was negative.  (*Id*.).

In September, 2003, Dr. Prebola reported that he has been treating Plaintiff for some time and that she has diffuse degenerative osteoarthritis.  He stated that Plaintiff's MRI showed multiple

degenerative disc changes and right knee degenerative osteoarthritis. The Plaintiff had a past history of osteoporosis, obesity, degenerative osteoarthritis and hypertension. (R. 251). Dr. Prebola also stated that:

> Her physical exam shows spasm in the low back, with a normal neurologic exam. She has degenerative changes in the bilateral lower extremity knees and bilateral sacroiliac regions.
>
> Based on her complete medical status, I believe she is disabled from gainful employment. Her physical impairment will certainly last in excess of one year.

(R. 215).

The Plaintiff stated in her applications for DIB and SSI benefits that her disability began on September 30, 2002, when her symptoms became worse and the telemarketing business for which she worked closed. (R. 60). Plaintiff stated that she was unable to sit or stand for prolonged time since it causes pain and that her pain medications make her tired. Plaintiff listed her treating doctors for her back and leg impairments as Dr. Durkin and Dr. Prebola. (R. 62). Plaintiff also indicated that she received physical therapy at the John Heinz Institute. (*Id.*). Plaintiff's medications include Arthrotec (arthritis/back pain), Fluxetine (depression), aspirin, Evista (calcium), Inderal (hypertension), a water pill, and Lipitor (cholesterol). (R. 62, 67, 144).

Plaintiff testified at the ALJ hearing that her medications "take the edge off sometimes," but that she thinks that she needed stronger medication. (R. 244-245). Plaintiff stated that the only side effect of her medications was that they made her "a little tired." (R. 245).

Thus, Plaintiff receives prescription pain medication and, at one time, physical therapy for her back condition.  Indeed, the record reflects that Plaintiff completed physical therapy for her lumbar condition; however, Dr. Durkin reported that the Plaintiff did not benefit from physical therapy and it was discontinued.  (R. 214).

Plaintiff stated at her ALJ hearing that she has pain in her back and constantly in her legs. (R. 245).  Plaintiff also stated that she has pain in her left knee, that she does not wear a knee brace or back brace, and that her knee limits her walking.  (R. 246, 252-253).  The Plaintiff does not use a cane to walk. (R. 253).  The Plaintiff also testified as to her daily activities.  (R. 247-253).

The ALJ found that, with respect to Plaintiff's physical impairments, multi-level degenerative osteoarthritis of her lumbar spine and left knee, which are severe, they did not meet or equal any listed impairment.  (R. 18).  The ALJ also found that the Plaintiff's severe impairments do not prevent her from performing her past relevant work.  Thus, the ALJ found that Plaintiff was able to perform sedentary work. (R. 18, 19).  The Plaintiff contends, in part, that this finding is not supported by substantial evidence.  We agree with Defendant that this finding was supported by substantial evidence in light of the medical record as discussed above.

### D. Analysis

Plaintiff contends that the ALJ committed an error of law when he found that she (Plaintiff) had the RFC to perform her past sedentary work, because this decision is not supported by substantial evidence.  Additionally, Plaintiff argues that the ALJ's finding that her testimony was not completely credible was erroneous and that he erroneously failed to fully consider the evidence from Plaintiff's treating physicians as well as the objective medical evidence.  (Doc. 5, p. 7).  Thus,

Plaintiff, in part, requests that the decision of the Commissioner denying her DIB and SSI benefits be reversed (Doc. 5) because the ALJ failed to give appropriate weight to the opinions of her attending physicians. *See Mason v. Shalala*, 994 F. 2d 1058, 1067 (3d Cir. 1993).

The ALJ found that Plaintiff did have  severe impairments based on the requirements set forth at 20 C.F.R. §§ 404.1527 and 416.927. (R. 15,18 @ ¶ 6.).  However, he also found that such impairments did not render the Plaintiff disabled.  (*Id.*, ¶ 10.).  The existence of a medical condition does not demonstrate a disability for purposes of the Act.  Thus, the issue was not whether Plaintiff suffered from a medical condition, but whether that condition results in a functional disability that prevents Plaintiff from performing substantial gainful activity.  *See Petition of Sullivan*, 904 F. 2d 826, 845 (3d Cir. 1990).  As discussed above, we find, contrary to Plaintiff's argument, that the medical evidence supported the ALJ's finding that the Plaintiff was not disabled.

### i. The ALJ's RFC Finding That Plaintiff Could Perform Her Past Sedentary Work

As discussed, the ALJ found that the Plaintiff had physical impairments (multi-level degenerative osteoarthritis of her lumbar spine and left knee)  which were severe, but that they were not severe enough to meet or equal any listed impairment.  (R. 15).  The ALJ also found that the Plaintiff had the RFC to perform her past sedentary work as a telemarketer and lamp shade wrapper.  (R. 18).  Plaintiff alleges that the ALJ erred in finding that she could perform her past sedentary work in light of her back and knee disorders.  Plaintiff also argues that the ALJ erred by not giving full credibility to her testimony and by ignoring the medical evidence of her treating doctors, which indicated that she was disabled under the Act.

11

Upon review, we find that the ALJ stated the reasons in his decision with respect to his RFC finding, by discussing the medical evidence, both objective evidence and the reports of Plaintiff's treating doctors, and explaining his reasoning.  (R. 15-17).  It is clear that the Third Circuit requires the ALJ to identify the relevant listed impairments and to provide an explanation of reasoning for a finding that a claimant does not meet or equal a listed impairment.  *See Burnett*, 220 F. 3d at 120.  We find that the ALJ has fully explained his reasoning as to why the Plaintiff's physical impairments did not meet or equal any of the musculoskeletal listings, specifically listing 1.04 (disorders of the spine).  (R. 15).

The ALJ also discussed the Plaintiff's RFC as a result of her physical impairments, as required by 20 C.F.R. § 404.1520.  (R. 16-17).  The Plaintiff's degree of functional abilities as a result of her physical impairments was also discussed by the ALJ.  (*Id*.).

The Plaintiff contends that the ALJ erred in finding that she was capable of performing her past sedentary work.[4]  She argues that her proper RFC is less than sedentary and is disabling.  (Doc. 5, p. 14).  She states that based on her testimony and the reports of her doctors, she cannot engage in substantial gainful activity for at least 12 months.  The Defendant argues that the ALJ's RFC finding was proper since Plaintiff's own records, despite the opinions of her doctors that she was unable work, show that she could perform sedentary work.  The Defendant also argues that the reports of Plaintiff's own doctors show that she could engage in sedentary work.

---

[4]As Defendant states (Doc. 6, pp. 21-22) the Plaintiff does not dispute that her past relevant work was sedentary in nature.

We find that the ALJ properly determined the Plaintiff's RFC.  Residual functional capacity is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett*, 220 F. 3d at 121. (Citations omitted).  In this case, the ALJ determined that, despite her severe physical impairments, the Plaintiff did have the RFC to perform her past relevant sedentary work.

The Court in *Burnett*, 220 F. 3d at 121, stated that the ALJ must consider all evidence before his in making a RFC determination.  The *Burnett* Court further stated that, while the ALJ is permitted to weigh the credibility of the evidence, he is required to give some indication of the evidence which he rejects, as well as the reasons for discounting the evidence.  *Id*.  Thus, the ALJ must mention and refute some of the contradictory medical evidence before him. *Id. See also Adorn v. Shalala*, 40 F. 3d 43, 48 (3d Cir. 1994).   We find that, in this case, the ALJ considered all of the medical evidence before him, and he mentioned and refuted some of the contradictory evidence, such as Dr. Prebola's and Dr. Decker's opinions that Plaintiff was disabled.  (R. 16-17).  The ALJ also gave greater weight to the findings of Dr. Prebola, a physiatrist, that the Plaintiff had normal muscle grade, reflexes sensation and only mild tenderness in the lumbar region.  The ALJ determined that Dr. Decker's findings that the Plaintiff had decreased range of motion in her lumbar spine and weakness in her left quadriceps muscles and Dr. Decker's opinion with respect to Plaintiff's limitations due to her impairments were entitled to lesser weight.  (R. 15).

The record reveals that on April 8, 2003, Dr. Prebola's physical exam of the Plaintiff showed as follows:

> She has bilateral knee crepitation to a mild degree.  Neurologically muscle grades, reflexes and sensation were completely normal.

> Heel and toe walking were normal.  Lumbar palpation shows
> mild tenderness in the lumbar region, but no trigger points.

(R. 143).

These findings of Dr. Prebola were consistent with his October, 2002, findings and his September, 2003, findings, discussed above. (R. 144, 215).  Dr. Prebola indicated that the Plaintiff's medical tests (bone scan) showed degenerative changes in her lumbar region, but that her EMG was negative.  (R. 216).  This doctor also recommended that Plaintiff begin swimming to help her condition.  (*Id*.).

The objective medical record in this case, as discussed above, reveals that the Plaintiff has degenerative arthritis, multiple degenerative disc changes of her lumbar spine and right knee degenerative osteoarthritis.  (R.  215).  The Plaintiff also has arthritis in her back, osteoporosis, obesity, degenerative osteoarthritis and hypertension.  (*Id*.).  She does not have, as the ALJ indicated, any disc herniations or neurological deficits.  (R. 17).  The ALJ also considered the Plaintiff's daily activities in making his RFC determination. (R. 17).   The ALJ considered a RFC Assessment performed on Plaintiff which found that she could engage in light work.  (R. 17, 190).  This assessment found that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently, that she could stand or walk about 6 hours  and sit about 6 hours in an 8-hour work day.  The ALJ's RFC finding was more restrictive than this RFC Assessment since he found that Plaintiff could only perform sedentary work as opposed to light work.  We also agree with the Defendant that Dr. Prebola's own stated physical exam findings, in particular, that Plaintiff had normal neurological

exams and her heel and toe walking were normal, also supports the ALJ's RFC determination.  (Doc. 6, p. 19).[5]

Based on the stated evidence, the ALJ also properly found that the Plaintiff's physical impairments did not meet listing 1.04.  In light of the *Burnett* case, we find that the ALJ made proper discussion of the evidence regarding listing 1.04 and an explanation of reasoning that the Plaintiff's physical impairments, which were found to be severe, did not meet or equal listing 1.04.

While there is medical evidence which indicated that Plaintiff had some of the "A" criteria of listing 1.04[6], such as Dr. Decker's finding that Plaintiff had decreased range of motion in her lumbar spine (R. 15), there is substantial evidence to support the ALJ's decision that the Plaintiff's condition did not meet or equal listing 1.04.  We also find that substantial evidence supports the ALJ's determination that Plaintiff's severe physical impairments did not meet Listings 1.00, *et seq.* The Plaintiff has the burden of proving that she meets each of the requirements of a Listing.  *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  As discussed by the ALJ, the exams of Plaintiff's treating physicians did not indicate that the Plaintiff met or equaled any of the musculoskeletal

---

[5]In fact, it is mentioned in the ALJ's decision that there were no findings of neurological deficits.  ( R. 17).

[6]Listing 1.04 and 1.04A. provide as follows:

1.04 *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With:
    A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).
20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04 and 1.04A (2002).

listings. (R. 15). Nor is there any other evidence in the record which demonstrates that Plaintiff met Listing 1.04, *et seq*.

In particular, Plaintiff did not have neurological deficits, she did not have lumbar radiculopathy or lower extremity polyneuropathy, nor did she have diminished reflexes, sensation or loss of strength in the lower extremities.  (R. 15, 143, 144,  215, 216).   The Plaintiff was found to have negative straight leg raising tests (R. 216), but Dr. Decker found  limitation of motion of the spine.[7]  However, the Plaintiff did not have the other requirements of Listing 1.04, such as nerve root impingement, motor and sensory loss, loss of strength in her lower extremities, or spinal stenosis.  Additionally the ALJ stated that the Plaintiff did not have the requisite neurological deficits needed to meet this listing.  (R. 17).

As stated, while the Plaintiff was found to have a limited range of motion of her lumbar spine, she was not found to have spinal stenosis or nerve root compression.  (162-163).  Plaintiff did not have compromised strength in her  lower extremities , and her  straight leg raise test was negative.[8]

The ALJ properly discussed the objective medical findings as they related to listing 1.04. As such, there is substantial evidence to support the ALJ's finding that the Plaintiff's physical impairments were severe, that they did not meet or equal listing 1.04, and that she had the RFC to perform her past relevant sedentary work .

---

[7]Dr. Prebola found Plaintiff's lumbar flexion was near full.  (R. 216).

[8] The ALJ referred to Plaintiff's objective medical  exams (R. 15-16) and described the findings which were made therein and, in particular, addressed the findings relevant to listing 1.04  criteria with respect to Plaintiff's back condition.

### ii. Plaintiff's Credibility

In this case, the ALJ considered the Plaintiff's testimony concerning the severity of her back and leg conditions, her symptoms and the extent of her limitations, and he found that her testimony was not completely credible. (R. 17). The Plaintiff claims that this finding was erroneous. The Plaintiff states that the ALJ improperly resolved a credibility dispute with respect to her testimony since he determined that because she was able to visit relatives and is able to care fo her own basic needs, she can perform sedentary work during an 8-hour day. (Doc. 5, pp. 10-11). The Plaintiff argues that the ALJ's conclusion is not supported by the evidence and her testimony. The Defendant contends that the ALJ relied upon all of Plaintiff's symptoms, as well as the medical evidence and the other evidence in the record, as the basis for his credibility determination. (Doc. 6, pp. 8-9). We agree with the Defendant.

An ALJ must give weight to a claimant's subjective testimony of her inability to perform even light or sedentary work, but only when the claimant's testimony is supported by competent medical evidence. *Schaudeck v. Commissioner of Social Security*, 181 F. 3d 429, 433 (3d Cir. 1999). The ALJ found that the medical evidence presented supports a conclusion that Plaintiff has arthritis in her back and knee pain, but that the severity of her back and knee conditions are not of the extent alleged by the Plaintiff. (R. 17). The ALJ found that the medical evidence, including the reports of Plaintiff's treating doctors, the objective medical tests, and Plaintiff's testimony, reveals that the Plaintiff had impairments "that could reasonably be expected to cause symptoms related to her arthritis, but not to the extent that all types of work are precluded." Thus, the ALJ found that the

Plaintiff was not fully credible regarding the severity of the symptoms she claimed. (*Id*.). The record, as detailed above, substantiates this finding. (R. 143-144, 162-163, 215, 216).

The Plaintiff also states that the ALJ's credibility findings about her were not supported by the opinions of her treating doctors (Dr. Decker and Dr. Prebola), and thus were not supported by substantial evidence. (Doc. 5 at p. 11). Defendant states that the ALJ correctly considered all of the evidence in making his credibility finding. We concur with the Defendant that Dr. Prebola's aforementioned physical exam findings did not indicate that the Plaintiff could not perform sedentary work. (Doc. 6, p. 11). In fact, in June, 2003, this doctor recommended Plaintiff undertake a swimming program at the YMCA to help her condition. (R. 216). Previously, in October, 2002, Dr. Prebola recommended regular home exercise program for the Plaintiff. (R. 146).

The ALJ found that the Plaintiff was not entirely credible. (R. 17). The ALJ accurately discussed the Plaintiff's testimony and her daily activities stated in her testimony. (R. 16-17). In her testimony, Plaintiff stated that she did some household chores (R. 87, 251), that she uses a vacuum cleaner (R. 87, 248), that she cared for her granddaughter (R. 247), that she cooks (R. 251), goes grocery shopping but needs to rest (R. 89), cleans the dishes, drives and shops (R. 248), does the laundry but has trouble bending over (R. 249), and visits or has guests. Plaintiff stated that she occasionally goes to church. (R. 247-249). She stated that could not perform her past relevant work as a telemarketer and lamp shade wrapper largely because of her back and because it was hard to sit there. (R. 254). However, the Plaintiff admitted that if she worked at these jobs full-time, she would get a break every 2 hours to stand and walk. (R. 254). As a telemarketer, the Plaintiff described her job as requiring her to sit for 4 hours each day. (R. 78). However, this was when

18

Plaintiff was only part-time.  Significantly, Plaintiff admitted that if she was working full-time at this position, she would be able to take a break from sitting every 2 hours.  The ALJ found that the record as a whole, including the Plaintiff's daily activities, did not fully support Plaintiff's testimony regarding the extent of her disability. (R. 17).  The ALJ also considered all of the treatments which Plaintiff received and the medications and their effects on Plaintiff.

The Plaintiff's ability to lift within the requirements of sedentary work was substantiated by the RFCA's findings. (R. 190).  In her Daily Activities Questionnaire ("DAQ"), Plaintiff indicated that she could dress herself, shower and make her bed.  She can walk without assistance of a cane, back, and knee brace. (R. 247, 253).  The Plaintiff's daily activities can provide evidence of her symptoms and their effects on her ability to work.  *See* 20 C.F.R. § 404.1529(c)(3)(i).  The ALJ properly considered the Plaintiff's activities of daily living.

Plaintiff also argues that, in his credibility determination, the ALJ overstated that Plaintiff could visit with relatives and care for her own needs.  (Doc. 5, p. 10).  However, we find, as discussed above, that the ALJ relied upon the record as a whole.  The ALJ clearly articulated his reasoning for finding that the Plaintiff's subjective complaints of pain were not fully credible, and this determination is supported by substantial evidence.

As discussed above, we have also found that the ALJ properly determined the Plaintiff's RFC.  In this case, the ALJ determined that, despite her severe physical back and knee  impairments, the Plaintiff did have the RFC to perform sedentary work.  The ALJ, in recognition of Plaintiff's testimony, also found that the Plaintiff should be limited in that she could only perform a job with minimal lifting.  (R. 17).

### iii. Plaintiff's Treating Physician

The Plaintiff maintains that the ALJ failed to fully consider the medical evidence from her treating physicians, Dr. Decker and Dr. Prebola, as well as the objective medical evidence. (Doc. 5, p. 13). As mentioned, both of Plaintiff's doctors opined that she was totally disabled. (R. 214, 215). The ALJ recognized these opinions of Plaintiff 's doctors. (R. 17). However, the ALJ found that these opinions were based on the Plaintiff's subjective complaints and were not demonstrated by clinical signs. (*Id.*). The ALJ also considered all of the medical evidence and found that Plaintiff could perform sedentary work which required only minimal lifting. (*Id.*). As the Defendant asserts (Doc. 6, pp. 17-18), the ALJ did in fact discuss Dr. Decker's and Dr. Prebola's findings of disability, but he (the ALJ) must decide the issue of disability under the Act.[9] Thus, the ALJ properly did not give these opinions significant weight since he found them inconsistent with the evidence of record. (R. 17).

The Court of Appeals for the Third Circuit set forth the standard for evaluating the opinion of a treating physician in the case of *Morales v. Apfel*, 225 F.3d 310 (3rd Cir. 2000). The Court stated:

> A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Plummer* [v. *Apfel*, 186 F.3d 422, 429 (3d Cir.1999)] (*quoting Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)); *see also Adorno v. Shalala*, 40 F.3d 43, 47 (3d Cir.1994); *Jones*, 954 F.2d at 128; *Allen v. Bowen*, 881 F.2d 37, 40-41 (3d

---

[9]As Defendant points out (Doc. 6, p. 18), it is the ALJ's determination, and not Dr. Prebola's and Dr. Decker's, as to whether the Plaintiff is disabled. *Adorno. v. Shalala,* 40 F. 3d 43 (3d Cir. 1994).

Cir.1989); *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988); *Brewster*, 786 F.2d at 585. Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Plummer*, 186 F.3d at 429 (*citing Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir.1993)). The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled. *See Adorno*, 40 F.3d at 48. In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion. *Plummer*, 186 F.3d at 429; *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988); *Kent*, 710 F.2d at 115.

*Id*. at 317-318.

Similarly, the Social Security Regulations state that when the opinion of a treating physician is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record," it is to be given controlling weight. 20 C.F.R. §416.927(d)(2). When the opinion of a treating physician is not given controlling weight, the length of the treatment relationship and the frequency of examination must be considered. The Regulations state: "Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source." 20 C.F.R. §416.927(d)(2)(I). Additionally, the nature and extent of the treatment relationship is considered. The Regulations state: "Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided

and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories. For example, if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her opinion with respect to your neck pain, but we will give it  less weight than that of another physician who has treated you for the neck pain. When the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source." 20 C.F.R. §416.927(d)(2)(ii).

We construe the Plaintiff as arguing that the ALJ erred in assessing the weight afforded to her treating physicians' opinions and determination that she was totally disabled.  The ALJ did assess the opinions of Plaintiff's treating doctors, as discussed.  (R. 15-16). The ALJ discussed the opinions of Plaintiff's doctors, and we agree with his conclusion that a finding of disability was not supported by her records, by the doctors' clinical findings (particularly Dr. Prebola's), or by the record as a whole, including the stated objective medical tests.  (R. 17).

As discussed, Dr. Decker indicated in her September, 2003, letter that Plaintiff was totally disabled.  (R. 214).  Dr. Decker also found that Plaintiff could not sit and stand on a prolonged basis due to her back pain.  (R. 214).  The Plaintiff, as stated, testified about her difficulties with bending. The ALJ considered these findings and in fact included them in his RFC finding. During the ALJ's questioning of the Plaintiff, she admitted that if she worked full time at her past telemarketing job, she would have a break from sitting every 2 hours. The ALJ also found that the Plaintiff could only perform minimal lifting.  (R. 17).  These findings were consistent with the sedentary level of work which the ALJ found Plaintiff could perform.

The ALJ considered Dr. Decker's and Dr. Prebola's disability opinions and found that they were  not consistent with the medical records, as discussed above.  Further, as noted, it is the ALJ's determination as to whether the Plaintiff is disabled, and not Dr. Decker's and Dr. Prebola's. *Adorno, supra.*

Plaintiff argues that the ALJ erred by failing to fully consider the reports and opinions of  her treating doctors.  The record indicates that the ALJ did thoroughly consider the reports and opinions of Plaintiff 's doctors as well as the diagnostics tests.  (R. 15-17).

## V.  Recommendation.

Based on the foregoing, it is respectfully recommended that the Plaintiff's appeal of the ALJ's decision be denied.

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: April 19, 2005**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LOIS M. FISHER, | : | CIVIL ACTION NO. **3:CV-04-0914** |
| | : | |
| Plaintiff | : | (Judge Caputo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| JOANNE B. BARNHART, | : | |
| Commissioner of | : | |
| Social Security, | : | |
| | : | |
| Defendant | | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **April 19, 2005.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within ten (10)
days after being served with a copy thereof. Such party shall file
with the clerk of court, and serve on the magistrate judge and all
parties, written objections which shall specifically identify the
portions of the proposed findings, recommendations or report to which
objection is made and the basis for such objections. The briefing
requirements set forth in Local Rule 72.2 shall apply. A judge shall
make a *Defendant novo* determination of those portions of the report or
specified proposed findings or recommendations to which objection
is made and may accept, reject, or modify, in whole or in part, the findings
or recommendations made by the magistrate judge. The judge, however,
need conduct a new hearing only in his or her discretion or where
required by law, and may consider the record developed before the
magistrate judge, making his or her own determination on the basis
of that record. The judge may also receive further evidence, recall

24

witnesses or recommit the matter to the magistrate judge with instructions.

s/ Thomas M. Blewitt
THOMAS M. BLEWITT
United States Magistrate Judge

Dated: April 19, 2005